UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL LIRETTE, individually and on behalf of all others similarly situated, | § § § | Docket No. 4:17-cv-2093 |
| Plaintiff, | § § | |
| | § | JURY TRIAL DEMANDED |
| vs. | § § | |
| SM ENERGY COMPANY, | § § | |
| Defendant. | § § | |

**UNOPPOSED MOTION FOR APPROVAL OF
CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE AND
STIPULATION OF DISMISSAL OF LAWSUIT WITH PREJUDICE**

Plaintiff Michael Lirette ("Lirette") files this Unopposed Motion for Approval of Confidential Settlement Agreement and Release and Stipulation of Dismissal of Lawsuit with Prejudice ("Motion and Stipulation") and in support would show as follows:

## I.   INTRODUCTION AND BACKGROUND

### A.   THE ALLEGATIONS

On July 7, 2017, Lirette filed the instant collective action lawsuit against Defendant SM Energy Company ("SM Energy"), in which he alleges that SM Energy misclassified him and a putative class of "current and former oilfield workers" as independent contractors and paid them a day-rate with no overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, 29 C.F.R. § 778.112 (the "Lawsuit"). *See* Doc. No. 1.

SM Energy denies Lirette's allegations in the Lawsuit and asserted affirmative and other defenses, including that Lirette and those similarly situated were not employees of SM Energy (and instead were independent contractors) and that even if they were employees, they were properly classified as exempt.). *See* Doc. No. 7. SM Energy further argued that it acted in good faith with

respect to its practices and denied that any violation of the FLSA was willful or that any class of similarly situated employees existed. *See id.*

On November 2, 2017, SM Energy and Lirette (the "Parties") agreed to stay this matter entirely, including tolling the Putative Class Members' statutes of limitations to conduct settlement negotiations. *See* Doc. No. 30. On February 23, 2018, the Parties mediated with Jack Wisdom, an experienced FLSA mediation in Denver, Colorado.

While SM Energy still denies liability, the Parties determined that avoiding the expense and expenditure of resources attendant to litigation was in the best interests of the Parties and agreed to attempt to resolve this matter. Prior to reaching an agreement, the Parties conducted an in-depth analysis of the potential damages, interviewed witnesses, and investigated the business practices at issue. These efforts provided the Parties with great insight as to the potential liability and the range of recovery at issue. Further, these efforts, coupled with each Party's thorough preparation and familiarity with the facts surrounding the allegations allowed both Parties to intelligently, and in good faith, weigh both the risks and benefits of continued litigation.

**B.    SETTLEMENT**

After months of formal and informal settlement negotiations, the Parties reached an agreement in principle to resolve the claims of all eligible drill site and completions consultants. The Parties then worked diligently to agree upon the terms of the formal Confidential Settlement Agreement and Release ("Agreement"), a copy of which is attached in its entirety and has been filed under seal as Exhibit A.[1]   Lirette now seeks Court approval of the Parties' Agreement. If approved by the Court, the Agreement will resolve this matter in its entirety.

---

[1]   The Parties submit that, without confidentiality of the amounts in and the scope of the Agreement, there is an increased likelihood that SM Energy would be exposed to further litigation (on claims that it denies), thus depriving SM Energy of a benefit which was the basis for the settlement bargain. In addition, the publication of the Settlement Agreement is potentially harmful to SM Energy's ongoing operations and its competitiveness in the marketplace. There is also a public interest in confidentiality in that it encourages and facilitates settlement negotiations and the voluntary

As explained above, the Court should approve the Agreement because it represents a fair compromise of bona fide disputes concerning, among other things, whether SM Energy employed the Settlement Class Members. Indeed, over the life of this Lawsuit, the Parties informally exchanged extensive information and documents relating to SM Energy's classification and compensation of the workers, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted. Based upon Class Counsel's[2] investigation, legal evaluation, and assessment of the contested legal and factual issues involved in this Lawsuit, including Class Counsel's understanding of the uncertainties of litigation and the relative benefits conferred upon the Settlement Class Members pursuant to the Agreement, Class Counsel has concluded that this settlement is fair, reasonable, adequate, and in the best interests of the Class Members.

As shown through this Motion and Stipulation, the proposed settlement is the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information, and engaging in substantial negotiations over many months. Because the terms of the Agreement are reasonable and fair to all parties involved. Accordingly, Lirette asks the Court to approve the Agreement, and to enter an order dismissing this Lawsuit with prejudice.

## II. SETTLEMENT TERMS

### A. GENERAL TERMS

As set forth in detail in the attached Agreement, the Parties reached a settlement of behalf of 250 drill site and completions consultants who will receive notice of their right to participate in the settlement under the terms of the Agreement. To this end, Lirette has attached the proposed Notice and Consent documents that will be used to notify the Potential Class Members of their right to

---

resolution of disputes, thereby preserving the resources of the Court. Because all relevant information will be provided to any interested party, no potential claimant is disadvantaged by such confidentiality. As there is no prejudice arising from in camera review but great prejudice should such review be denied, it should be permitted.

[2] All capitalized terms in this Motion and Stipulation that are not otherwise defined, shall have the meaning ascribed to such terms in the Agreement.

participate in this settlement and that explain the terms of the settlement, the scope of the release, the estimated settlement amounts, and the steps that must be taken to participate in the settlement. These documents will be mailed and emailed to the Potential Class Members twice. In addition, Class Counsel shall be permitted to make one round of scripted phone calls, pursuant to the mutually-agreed-upon script to each Potential Class Member who has not yet returned a consent. Individuals who elect to participate in the settlement will be required to return their properly executed Consent form along with a Form W-9 on or before the close of the Notice Period.

Each Settlement Class Member's Settlement Payment will be calculated based upon records of the class member's compensation and weeks of service during the relevant time. This means that a settlement Class Member who timely files a properly executed Settlement Consent Form will be eligible to receive a pro-rata Settlement Payment based upon the alleged compensation owed and time worked during the relevant period. Settlement Payments will be delivered to Class Counsel for each of the Settlement Class Members within 30 days after the Effective Date or the close of the Notice Period, whichever comes later, but SM's payment obligations shall not arise before December 1, 2018, at the earliest.

In exchange for the Settlement Payment, the Settlement Class Members will release the Released Parties from all state and federal wage related claims asserted or that could have been asserted in this Lawsuit. Only those individuals who timely return a Consent and a Form W-9 will be eligible to receive a Settlement Payment. *See* 29 U.S.C. § 216(b) (only workers who consent in writing are part of an FLSA collective action). The portion of the Net Settlement Amount attributed to the Potential Class Members who do not timely return a completed Consent, will be retained by SM Energy.[3]

---

[3] If any of the terms summarized in this Motion and Stipulation are different from or inconsistent with the terms of the Agreement, the terms of the Agreement control.

**II.     ARGUMENT**

Lirette now seeks Court approval of the Agreement. The Agreement represents a fair compromise of a bona fide dispute concerning the legality of SM Energy's compensation practices with respect to the Settlement Class Members.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir. 1982)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda,* 2009 WL 3233405, at *1 (quoting *Lynn's,* 679 F.2d at 1354). When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. *See Lynn's Food Stores*, 679 F.2d at 1355.

    **A.     BONA FIDE DISPUTES EXISTED**

Congress recognized that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts that endangered national health and efficiency and the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07, 65 S. Ct. 895, 89 L. Ed. 1296 (1945).[4] Due to this unequal bargaining power, Courts must ensure that a settlement agreement, following an FLSA claim, is the product of a bona fide dispute.

---

[4]     *Brooklyn Savings Bank*, 324 U.S. at 707 (requiring Court or Department of Labor approval for FLSA settlements and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona

Here, the Parties fiercely contested the claims and defenses asserted in the Lawsuit. Lirette alleged that SM Energy misclassified the Putative Class Members as independent contractors and failed to pay them overtime. SM Energy argued that the Putative Class Members were independent contractors and were not employees of SM Energy. SM Energy further argued that in the event of an adverse finding on employee status, that the Putative Class Members' duties and compensation qualified the Class Members as exempt from the provisions of the FLSA. Further, Lirette argued that the Putative Class Members were similarly situated in the terms of relevant job duties and compensation practices, regardless of the length of time or location worked for SM Energy. On the other hand, SM Energy maintained that the Putative Class Members were not similarly situated and that their claims should be tried independent of each other.

The Parties further disagreed on whether Lirette could satisfy his burden to demonstrate that SM Energy acted willfully, which in turn affects whether he could recover compensation for two (2) years or three (3) years. *See* 29 U.S.C. § 255. Lirette also contends that SM Energy would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. *See* 29 U.S.C. § 260. SM Energy maintained that, at all times, it acted in good faith, and not willfully, and damages (if any) should be unliquidated and be recovered only for a two (2) year period.

As such, the current settlement before the Court is the result of a bona fide and contested dispute where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

---

fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

**B.     FAIR AND REASONABLE SETTLEMENT**

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). As well, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." Id.

The Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and in this case, were particularly well informed as to the facts and circumstances of the Lawsuit. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

After the Parties reached an agreement on the settlement following mediation and months of negotiation, the Parties engaged in further negotiations concerning the specific terms of the settlement and the scope of the Agreement. Indeed, it cannot be gainsaid that the settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Further, it is important to note that Lirette, the representative plaintiff on behalf of his coworkers, deems this settlement fair and reasonable. Lirette took an active role in this matter and

stayed informed on the status of the matter.

## III. CONCLUSION

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data and after extensive negotiations. Because of the various defenses asserted by SM Energy and the possibility that SM Energy may have successfully defeated or limited some or all of the Settlement Class Members' claims, including those claims related to willfulness, liquidated damages, and compensation for unpaid overtime, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

Lirette hereby requests that the Court: (1) approve this settlement, including all of the terms set forth in the Agreement; (2) allow the Agreement and all related documents to be filed under seal; (3) direct the Parties to implement and complete the notice and claims process as set forth in the Agreement; and (4) dismiss this lawsuit and the claims of Lirette and all of the Settlement Class Members with prejudice.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
Michael A. Josephson
Fed. Id. 27157
State Bar No. 24014780
mjosephson@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

AND

Richard J. (Rex) Burch
Fed Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Counsel for SM Energy about this motion, the relief sought and the exhibits attached, and that SM Energy is unopposed to this motion and the relief sought.

*/s/ Michael A. Josephson*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing.

*/s/ Michael A. Josephson*